WO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

BioD, LLC; and BioDlogics, LLC,    )
    )
                     Plaintiffs,    )
    )
            vs.    )
    )
Amnio Technology, LLC; Applied Biologics,  )
LLC; Terrell Suddarth; Pinnacle Transplant  )
Technologies, LLC; and Bruce Werber, D.P.M.,  )
    )    No. 2:13-cv-1670-HRH
                Defendants    )
_____)

## O R D E R

## Renewed Motion to Remand to Arbitration

Defendant Applied Biologics, LLC moves to compel arbitration.[1]  This motion is

opposed.[2]  Oral argument was requested but is not deemed necessary.

## Background

Plaintiffs are BioD, LLC and BioDlogics, LLC.  BioDlogics is a wholly owned

_____

[1]Docket No. 44.

[2]Docket No. 61.

subsidiary of BioD.[3]   Defendants are Amnio Technology, LLC; Applied Biologics, LLC;

Terrell Suddarth; Pinnacle Transplant Technologies, LLC; and Bruce Werber, D.P.M.

"BioD is a biotechnology company engaged in the development and commercializa-

tion of novel biological products derived from the placental tissues that it recovers from

live, healthy donors pursuant to informed consent."[4]   BioDlogics is "responsible for the

recovery, processing, and distribution of human tissue allografts."[5]

Plaintiffs allege that "[f]rom January 1, 2011 until February 2013, Plaintiff BioDlogics

had a Distribution Agreement with Stromer/Southwest/Medical & Orthopedics, LLC

('Stromer')...."[6]   Plaintiffs further allege that "Stromer ... entered into a Subdistributor

Supply Agreement with Applied Biologics on July 12, 2011...."[7]   The Subdistributor Supply

Agreement (hereinafter "the Agreement") defines Stromer as the "Distributor" and

Applied  Biologics  as  the  "Subdistributor"  and  provides  that  "Distributor  and

Subdistributor may be referred to herein as a 'Party' or, collectively, as the 'Parties.'"[8]   The

---

[3]Amended Complaint at 2, ¶ 2, Docket No. 37.

[4]Id. at 3, ¶ 11.

[5]Id. at ¶ 13.

[6]Id. at 14, ¶ 66.

[7]Id. at ¶ 68.

[8]Subdistributor Supply Agreement at 1, Exhibit E, Amended Complaint, Docket No. 37.

Agreement provides that "BioDlogics shall be a third party beneficiary under this

Agreement. With the exception of the foregoing, nothing in this Agreement is intended to

confer any benefits, rights or remedies unto any other person or entity except for the

Parties and their permitted successors and assigns."[9]

Section 1.8 of the Agreement defines "confidential information" to mean

> all proprietary and confidential information of a Party,
> including, without limitation, trade secrets, technical informa-
> tion, business information, sales information, customer and
> potential customers lists and identities, product sales plans,
> sublicense agreements, inventions, developments, discoveries,
> software, know-how, methods, techniques, formulae, data,
> processes and other trade secrets and proprietary ideas,
> whether or not protectable under patent, trademark, copyright
> or other areas of law, that the other Party has access to or
> receives.... For the avoidance of any doubt, information
> concerning any Product and know-how associated therewith,
> including, but not limited to, composition of any Product,
> methods of handling and storing of any Product, and methods
> of delivering any Product to patients shall be considered
> Confidential Information of BioDlogics.[10]

Section 7.1 of the Agreement provides that "[e]xcept as permitted elsewhere under this

Agreement, each Party shall (a) receive and maintain Confidential Information of the other

Party in strict confidence, [and] (b) not disclose such Confidential Information to any Third

---

[9]Id. at 12, § 11.9.

[10]Id. at 2, § 1.8.

Parties...."[11]

The Agreement further provides that

> [a]ny controversy or claim between the Parties arising out of or relating to this Agreement or a breach thereof which cannot be resolved by negotiation pursuant to Section 6.1 will be resolved by binding arbitration administered by the American Arbitration Association (the "<u>AAA</u>") under this Section 6.2 and the AAA's then-current Commercial Arbitration Rules. If any part of this Section 6.2 is held to be unenforceable, it will be severed and will not effect either the duty to arbitrate or any other part of this Section 6.2.[[12]]

In the amended complaint, BioD asserts the following claims against Applied Biologics:  1) a copyright infringement claim based on allegations that Applied Biologics copied BioD's website; 2)  a Lanham Act claim based on allegations that Applied Biologics made false and misleading statements about plaintiffs' products; 3)  a misappropriation of trade secrets claim; 4) an unjust enrichment claim; 5) an aiding and abetting claim based on allegations that Applied Biologics aided and abetted the other defendants' tortious conduct; and 6) a civil conspiracy claim based on allegations that since January 2013, Applied Biologics conspired with the other defendants to misappropriate BioD's copyrights and trade secrets.  BioDlogics asserts 1) a Lanham Act claim, 2) a misappropriation of trade secrets claim, 3) an unjust enrichment claim, 4) an aiding and abetting claim, 5) a conspiracy

---

[11]<u>Id.</u> at 8, § 7.1.

[12]<u>Id.</u> at 7-8, § 6.2

claim, and 6) a breach of contract claim.

Applied Biologics now moves to compel arbitration of plaintiffs' claims against it.

Discussion

The Federal Arbitration Act ("FAA") provides that a party may seek an order from a federal district court to compel arbitration where another party fails, neglects or refuses to arbitrate.  9 U.S.C. § 4.  "In enacting the FAA, Congress 'declared a national policy favoring arbitration' that was intended to reverse centuries of judicial hostility to arbitration agreements."  Samson v. NAMA Holdings, LLC, 637 F.3d 915, 923 (9th Cir. 2011) (quoting Southland Corp. v. Keating, 465 U.S. 1, 10 (1984)).  "The FAA therefore calls on courts to 'rigorously enforce agreements to arbitrate.'"  Id. (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985)).  But, "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"  Id. (quoting Howsam v. Dean Witter Reynolds, 537 U.S. 79, 83 (2002)).

The first question here is "whether there is a valid agreement to arbitrate between the parties...."  Burgess v. Qwest Corp., 546 F. Supp. 2d 1117, 1120 (D. Or. 2008).  "In determining whether a valid arbitration agreement exists, the court 'should apply ordinary state-law principles that govern the formation of contracts.'"  Id. (quoting Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003)).  "'The party seeking to compel

arbitration bears the burden of establishing the existence of an agreement to arbitrate by a preponderance of the evidence[.]'"   Id. (quoting Johnson v. Long John Silver's Restaurants, Inc., 320 F. Supp. 2d 656, 664 (M.D. Tenn. 2004)).   The court gives the "'opposing party the benefit of all reasonable doubts and inferences that may arise.'" Gelow v. Central Pacific Mortg. Corp., 560 F. Supp. 2d 972, 979 (E.D. Cal. 2008) (quoting Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1141 (9th Cir. 1991)).

Plaintiffs argue that BioDlogics is not bound by the arbitration clause because it applies only to controversies or claims "between the Parties", which plaintiffs contend the Agreement defines as Stromer and Applied Biologics.  Because BioDlogics is not a "party" to the Agreement, plaintiffs argue that BioDlogics is not bound by the arbitration clause. Plaintiffs point out that the Agreement defines "third party" to mean "any individual or entity other than a Party or an Affiliate of a Party."[13]  Plaintiffs argue that because the Agreement defines both "party" and "third party", it is clear that the Agreement contemplates two classes of parties, one of which is bound by the arbitration clause (a party) and one which is not (a third party).  Because the arbitration clause expressly applies only to "parties", plaintiffs insist that BioDlogics, which is a third-party beneficiary to the Agreement, cannot be bound by the arbitration clause.

BioDlogics did not sign the Agreement, which may mean that it is not a "party" to

_____

[13]Subdistributor Supply Agreement at 3, § 1.21, Exhibit E, Amended Complaint, Docket No. 37.

the Agreement.   However, "[c]ourts have held that nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." Britton v. Co-op Banking Group, 4 F.3d 742, 745 (9th Cir. 1993).   Under Arizona law, which governs the Agreement, "a third-party beneficiary to a contract is subject to and bound by an arbitration provision contained in that contract." Smith v. Clouse Const. Co., Case No. 1 CA–CV 11–0482, 2012 WL 5333576, at *5 (Ariz. Ct. App. Oct. 30, 2012) (citing Jeanes v. Arrow Ins. Co., 494 P.2d 1334, 1337 (Ariz. Ct. App. 1972)). BioDlogics is a third-party beneficiary to the Agreement.   Thus, it is irrelevant whether BioDlogics is a "party" as set out in the first paragraph of the Agreement.   As a third-party beneficiary of the Agreement, BioDlogics is bound by the arbitration clause.

If BioDlogics is bound by the arbitration clause, which it is because it is a third-party beneficiary, then Applied Biologics argues that BioD is also bound because BioDlogics is a wholly owned subsidiary of BioD.   Plaintiffs argue, however, that the fact that BioD is BioDlogics' parent is insufficient to bind BioD to the arbitration clause because "[a]s a general matter, ... a corporate relationship alone is not sufficient to bind a nonsignatory to an arbitration agreement." Thomson-CSF, S.A. v. Amer. Arbitration Ass'n, 64 F.3d 773, 777 (2d Cir. 1995).

However, "[i]n some instances, the corporate relationship between a parent and its subsidiary are sufficiently close as to justify piercing the corporate veil and holding one

corporation legally accountable for the actions of the other."  Id.  Here, plaintiffs' allegations in their amended complaint suggest that BioD and BioDlogics are closely intertwined.  For example, in paragraph 69 of the amended complaint, plaintiffs allege that "Section 1.8 of the Subdistributor Supply Agreement defines 'Confidential Information' as follows....  Such information constituted confidential information belonging to BioDlogics (and BioD) and is incorporated herein with the previously defined term 'BioD Confidential Information' and 'BioDlogics Confidential Information'[.]"[14]  In paragraph 76, plaintiffs allege that "Applied Biologics had an obligation under the Subdistributor Supply Agreement to maintain the confidentiality of Plaintiffs' Trade Secrets, BioD Confidential Information, and BioDlogics Confidential Information...."[15]  Plaintiffs further allege that "Applied Biologics is contractually forbidden, both expressly and impliedly, from using the BioD Confidential Information...."[16]  In  paragraph 74, plaintiffs alleged that Applied Biologics distributed five BioDlogics products, but then in paragraph 75, plaintiffs refer to these same products as BioD's products.[17]   These allegations suggest that BioD and BioDlogics are sufficiently close to justify piercing the corporate veil.  BioD and BioDlogics

_____

[14]Amended Complaint at 15, ¶ 69, Docket No. 37.

[15]Id. at 16, ¶ 76.

[16]Id. at 23, ¶ 119.

[17]Id. at 16, ¶¶ 74-75.

will be treated as a single entity for purposes of determining the application of the arbitration clause.  Thus, BioD is bound by the arbitration clause because BioDlogics is bound as a third-party beneficiary.

Plaintiffs are also estopped from claiming that they are not bound by the arbitration clause.  "In the arbitration context, a nonsignatory to an agreement requiring arbitration may be estopped, that is, barred, from avoiding arbitration if that party is claiming or has received direct benefits from the contract." Schoneberger v. Oelze, 96 P.3d 1078, 1081 (Ariz. Ct. App. 2004), overruled on other grounds.  Plaintiffs are claiming benefits under the Agreement, primarily that Applied Biologics contractually agreed not to use plaintiffs' trade secrets and other intellectual property.  For example, in Paragraph 102 of plaintiffs' amended complaint, plaintiffs allege that Applied Biologics failed to obtain BioDlogics' approval for a video "as required by Section 2.7" of the Agreement.[18]  Plaintiffs cannot based their claims on allegations that Applied Biologics failed to live up to its contractual duties, but then argue that they are not bound by the arbitration clause in the Agreement.

Because there is a valid arbitration agreement between plaintiffs and Applied Biologics, the next question is whether plaintiffs' claims against Applied Biologics are encompassed by the arbitration clause.  "'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]'"  Wolsey, Ltd. v. Foodmaker, Inc., 144

---

[18]Amended Complaint at 20, ¶ 102, Docket No. 37.

F.3d 1205, 1209 (9th Cir. 1998) (emphasis omitted) (quoting <u>Moses H. Cone Hosp. v.</u> <u>Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983)).  "[T]he standard set by the Court for finding a dispute nonarbitrable is a strict one:  There must be either an 'express provision excluding a particular grievance from arbitration' or 'the most forceful evidence of a purpose to exclude the claim from arbitration.'"  <u>Int'l Ass'n of Machinists v. Howmet</u> <u>Corp.</u>, 466 F.2d 1249, 1252 (9th Cir. 1972) (quoting <u>United Steelworkers of Amer. v. Warrior</u> <u>& Gulf Nav. Co.</u>, 363 U.S. 574, 585 (1960)).

The arbitration clause in the Agreement applies to "[a]ny  controversy or claim between the Parties arising out of or relating to this Agreement or a breach thereof...."[19]  A clause that contains the words "'arising out of or relating to this agreement' has been labeled 'a broad arbitration clause.'"  <u>Mediterranean Enterprises, Inc. v. Ssangyong Corp.</u>, 708 F.2d 1458, 1464 (9th Cir. 1983) (quoting <u>Michele Amoruso E Figli v. Fisheries</u> <u>Development Corp.</u>, 499 F. Supp. 1074, 1080 (S.D.N.Y. 1980)); <u>see also</u>, <u>PPG Industries, Inc.</u> <u>v. Pilkington plc</u>, 825 F. Supp. 1465, 1478 (D. Ariz. 1993) ("The phrase 'arising out of or relating to' has been construed as creating a broad arbitration clause").

Plaintiffs do not dispute that BioDlogics' breach of contract claim,  their trade secret claims, and their unjust enrichment claims  are covered by the arbitration clause.  But, they argue that BioD's copyright infringement claim and their Lanham Act, aiding and abetting,

---

[19]Subdistributor Supply Agreement at 7, § 6.2, Exhibit E, Amended Complaint, Docket No. 37.

and conspiracy claims would not be subject to arbitration.

All of plaintiffs' claims against Applied Biologics fall within the scope of the arbitration clause. The arbitration clause is broad enough to encompass Lanham Act claims and other intellectual property claims. See Comedy Club, Inc. v. Improv West Assocs., 553 F.3d 1277, 1285-86 (9th Cir. 2009) (arbitration clause that provided that "[a]ll disputes relating to or arising under this Agreement ... shall be resolved by arbitration" applied to "all disputes, equitable and legal," including trademark disputes); Valueselling Assocs., LLC v. Temple, Case No. 11–56229, 2013 WL 2350473, at *1 (9th Cir. May 30, 2013) (arbitration clause that provided that "'[a]ny dispute, controversy, or question arising under, out of or relating to' the purchase of VSA and the subsequent termination of Temple's rights to market VSA products" applied to copyright infringement claims); ValueSelling Assocs., LLC v. Temple, Case No. 09 CV 1493 JM, 2009 WL 3736264, at *2, 4 (S.D. Cal. Nov. 5, 2009) (arbitration clause that provided that "[a]ny dispute, controversy, or question arising under, out of or relating to this Agreement or the breach thereof" applied to Lanham Act claims). Plaintiffs' intellectual property claims are all related to Applied Biologics' contractual obligations, even though some of the conduct is alleged to have occurred after the Agreement expired because the Agreement gave Applied Biologics the right to continue selling plaintiffs' products after the Agreement terminated.[20] As for

---

[20]Subdistributor Supply Agreement at 7, § 5.3.2, Exhibit E, Amended Complaint, Docket No. 37.

the aiding and abetting and conspiracy claims, these claims are subject to arbitration because they are based on allegations of copyright infringement and misappropriation of trade secrets, conduct which plaintiffs allege was a breach of the Agreement.

<u>Conclusion</u>

Applied Biologics' motion to compel arbitration[21] is granted.  Pursuant to 9 U.S.C. § 3 and Applied Biologics' request,[22] this matter is stayed as to defendant Applied Biologics only pending resolution of the arbitration.

DATED at Anchorage, Alaska, this <u>24th</u> day of January, 2014.

/s/ H. Russel Holland
United States District Judge

---

[21]Docket No. 44.

[22]<u>Id.</u> at 2.