WO

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

BioD, LLC; and BioDlogics, LLC,    )
    )
                  Plaintiffs,    )
    )
        vs.    )
    )
Amnio Technology, LLC; Applied Biologics,    )
LLC; Terrell Suddarth; Pinnacle Transplant    )
Technologies, LLC; and Bruce Werber, D.P.M.,    )
    )    No. 2:13-cv-1670-HRH
                 Defendants    )
_____)

## O R D E R

### Motion to Dismiss

Defendants Amnio Technology, LLC; Bruce Werber, D.P.M.; Terrell Suddarth; and

Pinnacle Transplant Technologies, LLC move to dismiss plaintiffs' amended complaint.[1]

These motions are opposed.[2]  Oral argument was requested but is not deemed necessary.

_____

[1]Docket Nos. 45, 46 & 48.

[2]Docket No. 66.

Background

Plaintiffs are BioD, LLC and BioDlogics, LLC., which is a wholly owned subsidiary of BioD.[3]   Defendants are Amnio Technology, LLC; Applied Biologics, LLC; Terrell Suddarth; Pinnacle Transplant Technologies, LLC (PTT); and Bruce Werber, D.P.M.[4]

"BioD is a biotechnology company engaged in the development and commercialization of novel biological products derived from the placental tissues that it recovers from live, healthy donors pursuant to informed consent."[5]   "BioDlogics is "responsible for the recovery, processing, and distribution of human tissue allografts."[6]

"On June 1, 2006, Suddarth began his full-time employment with BioD as Director of Manufacturing/Product Development."[7]   Suddarth "remained employed by BioD ... through August 21, 2009" and "returned to BioD as a paid consultant from March 14, 2010 through July 10, 2011."[8]   Plaintiffs further allege that "Suddarth is a Member of BioD,

---

[3]Amended Complaint at 2, ¶ 2, Docket No. 37.

[4]Any reference to "defendants" herein means Werber, Suddarth, PTT, and Amnio Technology only.

[5]Amended Complaint at 3, ¶ 11, Docket No. 37.

[6]Id. at ¶ 13.

[7]Id. at 4, ¶ 17.

[8]Id. at 7, ¶¶ 26-27.

LLC."[9]  Suddarth contends, and plaintiffs do not dispute, that as part of his compensation he received a 1% membership interest in BioD.  Plaintiffs allege that "[p]ursuant to the BioD Limited Liability Company Agreement, Suddarth promised and agreed that he would not disclose BioD's confidential and proprietary information."[10]

In April 2007, Suddarth signed an Employee Confidentiality and Invention Assignment Agreement in which he agreed to only use BioD's confidential information "to the extent necessary to perform [his] duties as an employee of the Company for the benefit of the Company."[11]  The Employee Confidentiality Agreement provides that Suddarth's obligations under the agreement "remain in full force and effect not only during [his] employment with Company, but also after the termination of any such employment for any reason."[12]  The Employee Confidentiality Agreement also provides that Suddarth

> irrevocably consent[s] and submit[s] to the exclusive jurisdiction of the courts of the State of Colorado and the U.S. District Court for the District of Colorado with respect to any actions or causes of action arising under this Agreement, and further agree[s] that such courts shall be the exclusive venue of any actions or causes of action arising hereunder (unless injunctive

---

[9]Id. at 9, ¶ 37.

[10]Id.  Although plaintiffs attached numerous exhibits to their amended complaint, the BioD Limited Liability Company Agreement is not attached.

[11]Employee Confidentiality and Invention Assignment Agreement at 2, ¶ 5, Exhibit B, Amended Complaint, Docket No. 37.

[12]Id. at 5, ¶ 16.1.

relief is sought and, in the Company's judgment, may not be effective unless obtained in some other venue).[13]

Plaintiffs allege that "[i]n January 2013, Suddarth, [d]efendant Werber and others formed a new company, [d]efendant Amnio Technology[,]" which is "a direct competitor of BioD."[14]  Plaintiffs allege that "Suddarth provided Plaintiffs' Trade Secrets, the BioD Confidential Information and the BioDlogics Confidential Information[15] to ... Werber,

---

[13]Id. at 5, ¶ 16.6.

[14]Amended Complaint at 9, ¶ 38, Docket No. 37.

[15]The definition of BioD Confidential Information and BioDlogics Confidential Information is apparently taken from the 2007 Employee Confidentiality Agreement.  That agreement defines "Confidential Information" as the

> Company's technical and non-technical, proprietary, confidential, and other commercially valuable information that is designated as confidential by Company, or that is disclosed in such a manner or is of such a character as would put a reasonable person on notice as to the confidential and proprietary nature of the information, or that is not generally known in the relevant trade or industry with respect to Company's Business, products, processes, services, concepts, techniques, methods, or systems, or that is conceived, originated, discovered, known, or developed in whole or in part by me through my employment or services with respect to Company. Such Confidential Information, the existence and non-disclosure of which is vital to the success of Company's Business, includes, but is not limited to: (i) programs, computer programs, formulas, system documentation, source and/or object codes, data compilations, manuals, methods, techniques, processes, patent applications, or patented and/or unpatented technology utilized or developed by or for Company; (ii) research, know-how, development, designs, devices, or Inventions; (iii) Customer informa-

Amnio Technology, PTT, and perhaps others."[16]  Plaintiffs allege that "PTT is manufacturing ... placental tissue products for distribution by Amnio Technology and [d]efendant Applied Biologics."[17]  Plaintiffs further allege that Werber, Suddarth, and Amnio

---

> tion and identities or lists of Customers or prospective Customers; (iv) supplier information and identities or lists of suppliers or prospective suppliers; (v) contracts, transactions or negotiations with Customers or suppliers; (vi) sales information, sales bids or proposals, methods of sales, pricing policies, or cost information; (vii) marketing information or marketing plans, research and data; (viii) Company products or services anticipated or under development; (ix) "trade secrets" within the meaning of the Uniform Trade Secrets Act, or other applicable trade secrets law; and (x) any other information that Company uses in carrying out its Business that is not fully known by actual or potential competitors or other Persons through public or other authorized disclosures made by Company, including, without limitation, information about Company's Customers, or suppliers; the requirements or specialized requests of Customers or suppliers; sales or marketing strategies; cost information and costing policies or strategies; financial information or data; Business information, plans or strategies; organizational charts, information and data; flow charts and related information; products and services; Company's employees. operations, sources of supply, business methods or practices, training and training programs, and any documentation relating to any of the foregoing under this Section 1.5.

Employee Confidentiality and Invention Assignment Agreement at 1, ¶ 1.6, Exhibit B, Amended Complaint, Docket No. 37.

[16]Amended Complaint  at 10, ¶ 41, Docket No. 37.

[17]Id. at ¶ 46.

Technology are claiming that a 2010-2011 research study done using plaintiffs' products is research conducted using Amnio Technology's products.[18]  Plaintiffs also allege that "Amnio Technology, Suddarth, and Werber unlawfully copied significant portions of the BioD website and then used [that] material, without authorization, in Amnio Technology's own website."[19]

In the amended complaint, BioD alleges 1) a copyright infringement claim against Amnio Technology, Werber, and Suddarth based on allegations that they copied BioD's website (Count One); 2) a Lanham Act claim against Amnio Technology based on the 2010-2011 research study (Count Three); 3)  a breach of contract claim against Suddarth based on the 2007 Employee Confidentiality Agreement (Count Four); 4) a breach of contract claim against Suddarth based on the BioD Limited Liability Company Agreement (Count Five); 5) a misappropriation of trade secrets claim against Amnio Technology, Werber, Suddarth, and PTT (Count Six); 6) a breach of loyalty claim and a breach of the implied covenant of good faith and fair dealing claim against Suddarth (Count Seven); 7) an unjust enrichment claim against Amnio Technology, Suddarth, Werber, and PTT (Count Nine); 8) a tortious interference claim against Amnio Technology, Werber, and PTT (Count Ten); 9) an aiding and abetting claim against Amnio Technology, Suddarth, Werber, and PTT

---

[18]Id. at 11-12, ¶¶ 47-52.

[19]Id. at 12, ¶ 58.

(Count Eleven); and 10) a conspiracy claim against Amnio Technology, Suddarth, Werber, and PTT (Count Twelve).

In the amended complaint, BioDlogics alleges 1) a Lanham Act claim against Amnio Technology based on the 2010-2011 research study (Count Three); 2) a misappropriation of trade secrets claim against Suddarth, Werber, Amnio Technology, and PTT (Count Six); 3) an unjust enrichment claim against Amnio Technology, Suddarth, Werber, and PTT (Count Nine); 4) an aiding and abetting claim against Amnio Technology, Suddarth, Werber, and PTT (Count Eleven); and 5) a conspiracy claim against Amnio Technology, Suddarth, Werber, and PTT (Count Twelve).

In addition to compensatory and punitive damages, plaintiffs seek a preliminary and permanent injunction preventing defendants from continuing to misappropriate, use, and infringe plaintiffs' trade secrets, copyrights, and other confidential information. Plaintiffs also seek a preliminary and permanent injunction preventing Suddarth from breaching the 2007 Employee Confidentiality Agreement.

Amnio Technology, Werber, and PTT now move to dismiss plaintiffs' misappropriation of trade secrets, unjust enrichment, tortious interference, aiding and abetting, and conspiracy claims against them. Suddarth moves to dismiss all of plaintiffs' claims against him.

<u>Discussion</u>

"Rule 8(a) of the Federal Rules of Civil Procedure requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"   <u>In re Rigel Pharmaceuticals, Inc. Securities Litig.</u>, 697 F.3d 869, 875 (9th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)).   "Rule 12(b)(6) authorizes courts to dismiss a complaint for 'failure to state a claim upon which relief can be granted.'"   <u>Id.</u> (quoting Fed. R. Civ. P. 12(b)(6)).   "To avoid dismissal, the complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"   <u>Id.</u> (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).   "[A] plaintiff must 'allege sufficient factual matter ... to state a claim to relief that is plausible on its face.'"   <u>OSU Student Alliance v. Ray</u>, 699 F.3d 1053, 1061 (9th Cir. 2012) (quoting <u>Pinnacle Armor, Inc. v. United States</u>, 648 F.3d 708, 721 (9th Cir. 2011)).   In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff."   <u>Adams v. U.S. Forest Srvc.</u>, 671 F.3d 1138, 1142-43 (9th Cir. 2012).

<u>Copyright infringement claim (Count One)</u>

Suddarth contends, and BioD does not dispute, that BioD's copyright infringement claim against him is based on secondary liability.   "Secondary liability for copyright infringement may be imposed where a party has not committed direct infringement, but

-8-

nonetheless played a significant role in direct infringement committed by others." Viesti Assocs. Inc. v. Pearson Educ., Inc., Case No.12–cv–02240–PAB–DW, 2013 WL 4052024, at *6 (D. Colo. 2013).  There are two types of secondary liability:  contributory liability and vicarious liability.  "[A] defendant is a contributory infringer if it (1) has knowledge of a third party's infringing activity, and (2) 'induces, causes, or materially contributes to the infringing conduct.'"  Perfect 10, Inc. v. Visa Int'l Service Ass'n, 494 F.3d 788, 795 (9th Cir. 2007) (quoting Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004)).  "In the context of copyright law, vicarious liability extends beyond an employer/employee relationship to cases in which a defendant 'has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'"  A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1022 (9th Cir. 2011) (quoting Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262 (9th Cir. 1996)).

Plaintiffs allege that Suddarth "copied material portions of the BioD Website", that Suddarth "had access to the content of the BioD website and the content contained therein because Suddarth had access to the BioD Website and the content while working for BioD", and that Suddarth, as a founder of Amnio Technology, "directed and supervised the infringing conduct, and sought to receive a financial benefit from the infringement."[20] Courts have found such conclusory allegations insufficient to state a claim for contributory

---

[20]Amended Complaint at 24, ¶¶ 127-129, Docket No. 37.

or vicarious copyright infringement.

For example, in <u>Viesti</u>, 2013 WL 4052024, at *1, Viesti, a stock photography agency, alleged that Pearson had used photographs in a manner that exceeded the scope of Pearson's licenses and brought claims of copyright infringement, contributory copyright infringement, and vicarious copyright infringement against Pearson.  As for contributory copyright infringement, Viesti alleged

> that "Pearson transmitted the Photographs to other entities, subsidiary companies, divisions, affiliates, and/or third parties, who then translated the publications at issue into additional languages and included the Photographs in the translated publications without permission." In addition, the complaint claims that "Pearson had knowledge of the unauthorized use of the Photographs" by third parties and "Pearson enabled, induced, caused, facilitated, or materially contributed to the unauthorized use of the Photographs." Moreover, the complaint avers that "Pearson profited from its unauthorized transmission of the Photographs to other entities."

<u>Id.</u> at *7 (internal citations omitted).  The court found these allegations insufficient to state a plausible contributory copyright claim because there were "no factual assertions describing how Pearson enabled, induced, or facilitated the infringement of the photographs." <u>Id.</u>  The court concluded that "[w]ithout factual allegations describing instances of Pearson encouraging or promoting third parties to infringe Viesti's photographs, the complaint does not permit the [c]ourt to infer more than the mere possibility of Pearson's misconduct." <u>Id.</u>

As for vicarious liability, Viesti's complaint alleged "that 'Pearson had the right and ability to prevent the infringing conduct of other entities.' In addition, the complaint claims that 'Pearson received a direct financial benefit from the unauthorized use of the Photographs.'" Id. at *8 (internal citations omitted). The court found these allegations insufficient "because they are nothing more than a recitation of one element of a vicarious copyright infringement claim." Id. The court explained that "[t]he factual averments present no evidence to support a plausible inference that Pearson had the right or ability to prevent infringing conduct of unidentified third parties" and that "[g]iven that no third parties are identified in the complaint, Viesti's claim that Pearson had the right to control these unidentified third parties is speculative and conclusory." Id.

Similarly here, plaintiffs have done nothing more than recite elements of contributory and vicarious copyright infringement claims. Plaintiffs have not alleged that Suddarth was uniquely in possession of the original material on BioD's website, but rather plaintiffs allege that the material was publically available on the website for anyone to read and copy.[21] Plaintiffs have not alleged how Suddarth, as a non-employee of Amnio Technology, was personally responsible for the content of Amnio Technology's website. It is not sufficient to allege that Suddarth was a founder of Amnio Technology. Although plaintiffs allege some factual details about what was actually copied from BioD's website,

---

[21]Amended Complaint at 24, ¶ 128, Docket No. 37 ("at all relevant times BioD's Website was accessible by the general public at the domain name <biodlogics.com>").

they allege no factual details as to Suddarth's personal involvement in the infringement. Plaintiffs have alleged no facts that suggest that Suddarth induced Amnio Technology to infringe BioD's website or that suggest that Suddarth had the right to control and supervise the Amnio Technology employees who were involved in the alleged infringement. BioD has not stated a plausible copyright claim against Suddarth. BioD's copyright claim in Count One against Suddarth is dismissed.

<u>Breach of contract claims (Counts Four and Five)</u>

In Count Four, plaintiffs allege that Suddarth breached the 2007 Employee Confidentiality Agreement. In Count Five, plaintiffs allege that Suddarth breached the BioD Limited Liability Company Agreement. Suddarth argues that plaintiffs have failed to alleged plausible breach of contract claims because they never allege exactly what confidential information Suddarth purportedly disclosed in breach of these agreements. Suddarth contends that plaintiffs allege only vague and general categories of information, such as "processes" and "means and methods" instead of alleging any specific confidential information that Suddarth improperly disclosed. Suddarth argues that based on these vague and general allegations, it is impossible to discern what confidential information is at issue in these breach of contract claims.

Plaintiffs allege that

> Suddarth had access to and was involved in the development
> of confidential information and other intellectual property for

> BioD and BioDlogics.  Particularly, Suddarth has access to and
> was involved in the protocol, process and batch record
> development for BioD products.  As such, Suddarth had access
> to and knowledge of key production steps involved in the
> proprietary processing and packaging of BioD products,
> including but not limited to, the specific order of processing
> steps, tissue preparation, batch aliquot calculations for placen-
> tal tissue components and/or product size requirements, pre-
> processing, suspension solution ingredients and concentra-
> tions, preservation solution ingredients and concentrations,
> soak times, freezing and/or cyropreservation protocols and
> quality control procedures.[22]

These allegations are not vague and conclusory.  Rather, they are examples of specific

information that Suddarth had access to during his employment at BioD, information that

plaintiffs allege Suddarth has improperly disclosed to others.  BioD has stated plausible

breach of contract claims because it has adequately alleged what confidential information

Suddarth purportedly disclosed to others in breach of the agreements.

But even if BioD's claim that he breached the Employee Confidentiality Agreement

is plausible, which it is, Suddarth argues that Count Four should still be dismissed because

venue in Arizona is improper.  As set out above, the Employee Confidentiality Agreement

provides that Suddarth

> irrevocably consent[s] and submit[s] to the exclusive jurisdic-
> tion of the courts of the State of Colorado and the U.S. District
> Court for the District of Colorado with respect to any actions
> or causes of action arising under this Agreement, and further
> agree[s] that such courts shall be the exclusive venue of any

---

[22]Amended Complaint at 7, ¶ 29, Docket No. 37.

actions or causes of action arising hereunder (unless injunctive relief is sought and, in the Company's judgment, may not be effective unless obtained in some other venue).[23]

Suddarth argues that although the venue clause contemplates litigation in a forum outside of Colorado if necessary to pursue injunctive relief, the clause does not allow a <u>damages</u> claim to be brought outside of Colorado merely because injunctive relief may be ineffective in plaintiffs' chosen forum.  Suddarth also argues that plaintiffs' claim for injunctive relief against him is improper because injunctive relief cannot be awarded where damages provide an adequate remedy.  <u>See</u> <u>Dollar Tree Stores, Inc. v. Bayless Inv. & Trading Co.</u>, Case No. 2:10–cv–2055, 2011 WL 6032966, at *6 (D. Ariz. Dec. 1, 2011) ("it is beyond dispute that equitable relief is unavailable where a remedy at law would be adequate to make a party whole").  Suddarth argues that BioD, having initially sued only for damages, cannot now plead that it lacks an adequate remedy at law to enforce the 2007 Confidentiality Agreement.

The venue clause is not ambiguous.  It plainly provides for a Colorado venue unless BioD is seeking injunctive relief.  Because BioD is seeking injunctive relief, venue may lie outside of Colorado.

Finally, Suddarth argues that the confidentiality provisions in the Employee Confidentiality Agreement and the BioD Limited Liability Company Agreement are

---

[23]Employee Confidentiality and Invention Assignment Agreement at 5, ¶ 16.6, Exhibit B, Amended Complaint, Docket No. 37.

overbroad and unenforceable.  The court declines to consider this argument because it was raised for the first time in Suddarth's reply brief.  United States v. Mejia–Pimental, 477 F.3d 1100, 1105 n.9 (9th Cir. 2007).

BioD has stated plausible breach of contract claims against Suddarth.  Suddarth's motion to dismiss Counts Four and Five is denied.

Misappropriation of trade secrets claim (Count Six)

"To establish a claim for misappropriation of a trade secret, the claimant must first prove a legally protectable trade secret exists."  Calisi v. Unified Financial Services, LLC, 302 P.3d 628, 631 (Ariz. Ct. App. 2013).  Under the Uniform Trade Secret Act (UTSA), which Arizona has adopted,

> a "trade secret" is
>
> "information, including a formula, pattern, compilation, program, device, method, technique or process, that both:
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

Id. (quoting A.R.S. § 44–401(4) (2003)).

Defendants first argue that plaintiffs have failed to allege the existence of any valid trade secrets.  Defendants contend that plaintiffs have failed to "'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general

knowledge in the trade ... to permit the defendant[s] to ascertain at least the boundaries within which the secret lies.'" <u>MedioStream, Inc. v. Microsoft Corp.</u>, 869 F. Supp. 2d 1095, 1113 (N.D. Cal. 2012) (quoting <u>Farhang v. Indian Inst. of Tech., Kharagpur</u>, No. C–08–2658, 2010 WL 2228936, at *13 (N.D. Cal. 2010)). Defendants argue that "[t]he complaint need not 'spell out the details of the trade secret' but [it] must identify the trade secret with sufficient particularity to give defendants 'reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery.'" <u>Id.</u> (quoting <u>Farhang</u>, 2010 WL 2228936, at *13).

Plaintiffs allege that their trade secrets include the following:

- The means and methods behind the development of BioD's products, including extensive BioDfence production runs and protocol, process and batch record development for patch and liquid product;

- The means and methods by which BioD created a resorbable adhesion barrier allograft from human amniotic membrane;

- The means and methods by which BioD created a cryopreserved injectable allograft derived from human placental tissues;

- Manufacturing protocols for BioD products;

- Development of internal Standard Operating Procedures (SOPs) for BioD's products;

- The means and methods by which BioD com-

pleted product validation and testing, including the methods and means applied in the validation and testing;

- The processes developed and used to recover human birth tissue material used in BioD products;

- The processes developed and used to manufacture BioD products;

- The processes developed and used to package BioD products;

- The processes developed and used to store BioD products;

- The processes developed and used to distribute BioD products; and

- Safety profile of products/lot release testing.[24]

Defendants argue that plaintiffs have alleged nothing more than that their trade secrets are "means and methods", "protocols", and "processes." Defendants argue that these generic terms are not sufficient to suggest that plaintiffs have trade secrets. Defendants contend that plaintiffs are alleging that every aspect of their product development, manufacturing, testing, packaging, storage, and distribution is a trade secret. Defendants argue that categorical labels such as plaintiffs have used encompass all manner of public information including industry-wide practices and ordinary shipping and

---

[24]Amended Complaint at 8, ¶ 30, Docket No. 37.

handling procedures.  Defendants acknowledge that "Rule 8(a)(2) [only] requires that a pleading contain a 'short and plain statement of the claim showing that the pleader is entitled to relief'" and that "[]this pleading standard does not require 'detailed factual allegations[.]'" nexTUNE, Inc. v. McKinney, Case No. C12–1974 TSZ,  2013 WL 5211778, at *3 (W.D. Wash. Sept. 17, 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  But, defendants  argue  that  Rule  8(a)(2)  "'demands  more  than  an  unadorned, the-defendant-unlawfully-harmed-me accusation,'" which they insist is all plaintiffs have alleged here.  Id. (quoting Iqbal, 556 U.S. at 678).

As an initial matter,  defendants' reliance on MedioStream, 869 F. Supp. 2d at 1113, is misplaced because it applied California law, rather than Arizona law.  California's Uniform Trade Secrets Act provides that "'[i]n any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act (Title 5[,] commencing with Section 3426) of Part 1 of Division 4 of the Civil Code), before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code.'"  Brescia v. Angelin, 90 Cal. Rptr. 3d 842, 844 (Cal. Ct. App. 2009) (quoting Code of Civ. Proc. Section 2019.20).  Arizona's UTSA contains no such requirement.

Contrary to what defendants seem to be suggesting, "[t]here is no heightened

-18-

pleading standard for trade secrets claims.  A plaintiff is not expected to plead its trade secrets in detail because such disclosure would amount to an effective surrender of the trade secret."  Cobalt Flux, Inc. v. Positive Gaming AS, Case No. 2:08–CV–185 TS, 2008 WL 4534182, at *3 (D. Utah Oct. 6, 2008).  For example, in W.L. Gore & Associates, Inc. v. GI Dynamics, Inc., Case No. CV–10–8088–PHX–GMS, 2010 WL 5184254, at *9 (D. Ariz. Dec. 15, 2010), the counterclaimant alleged that its trade secrets, which included information about "research, development, and market opportunities", "specific financial informa-tion[,]" "specific manufacturing methods and prototypes," and "product design ... patent portfolio, and future plans" had been disclosed.  The court found these allegations sufficient to state a plausible trade secrets claim.  Id.

Similarly here, plaintiffs have alleged that defendants misappropriated their research and development, their internal  Standard Operating Procedures, their product recovery processes, and their manufacturing, package, storage, and distribution processes.  These allegations are more than mere "labels and conclusions" and any argument that some of this information might be public information is premature.  Plaintiffs' allegations are sufficient to suggest the existence of valid trade secrets.

Defendants next argue that plaintiffs have not  alleged that any of the supposed trade secrets derive independent economic value from being secret. Defendants argue that it is not sufficient for plaintiffs to simply allege that their trade secrets are valuable and not

generally known.

Plaintiffs have adequately alleged that their trade secrets derive independent economic value from being secret. Plaintiffs have alleged that their "[t]rade [s]ecrets are not general knowledge within the industry" and were "developed solely by and for use by BioD and BioDlogics."[25] Because plaintiffs are businesses, it is reasonable to infer that plaintiffs' trade secrets have economic value, and plaintiffs have alleged that they use or intend to use their trade secrets to gain "a competitive advantage over competitors that do not know of or use this information."[26]

Plaintiffs have stated plausible misappropriation of trade secrets claims. Defendants' motion to dismiss Count Six is denied.

Breach of loyalty and breach of the implied covenant claims (Count Seven)

BioD claims that Suddarth breached his duty of loyalty as a member of BioD LLC. Suddarth argues that this claim fails because as a non-managing minority member, he owes no fiduciary duties to BioD. See Van Weelden v. Hillcrest Bank, Case No. 2:10–CV–01833–PHX–JAT, 2011 WL 772522, at *3, 6 (D. Ariz. Feb. 28, 2011) ("the Arizona Limited Liability Company Act does not impose express fiduciary duties on managers or members of a limited liability company"); Marino v. Grupo Mundial Tenedora, S.A., 810

---

[25]Amended Complaint at 8-9, ¶ 32, Docket No. 37.

[26]Id. at 9, ¶ 34.

F. Supp. 2d 601, 608 (S.D.N.Y. 2011) ("minority members of an LLC do not owe fiduciary duties to other members").

Plaintiffs argue, however, that because BioD is a Delaware limited liability company,[27] Delaware law applies to the question of whether Suddarth owed any fiduciary duties. Plaintiffs contend that the question of whether LLC members owe fiduciary duties is unsettled in Delaware. Plaintiffs cite to Gatz Properties, LLC v. Auriga Capital Corp., 59 A.3d 1206, 1219 (Del. 2012), in which the court observed that "the merits of the issue whether the LLC statute does—or does not—impose default fiduciary duties is one about which reasonable minds could differ." Thus, plaintiffs argue that it is an open question in Delaware whether an LLC member owes any fiduciary duties.

Plaintiffs' argument is meritless. The issue in Gatz Properties was whether LLC managers and controllers owe fiduciary duties, not whether minority, non-managing members, such as Suddarth, owe fiduciary duties. As to that question, Delaware courts have consistently held that non-managing LLC members do not owe fiduciary duties. See Feeley v. NHAOCG, LLC, 62 A.3d 649, 662 (Del. Ch. 2012) ("Managers and managing members owe default fiduciary duties; passive members do not"); Imbert v. LCM Interest Holding LLC, Case No. 7845–ML, 2013 WL 1934563, at *7 (Del. Ch. 2013) ("Delaware law imposes no default fiduciary duties on non-managing, non-controlling members of limited

---

[27]See Amended Complaint at 1, ¶ 1, Docket No. 37.

liability companies"); <u>Kuroda v. SPJS Holdings, L.L.C.,</u> Case No. 4030-CC, 2010 WL 925853, at *7 (Del. Ch. March 16, 2010) (member who "was neither a manager of SPJS Holdings nor a controlling member" had "no fiduciary duties").

As for BioD's claim that Suddarth breached the covenant of good faith and fair dealing implied in the BioD Limited Liability Company Agreement, under Delaware law, "to state a claim for breach of the implied covenant," BioD "'must allege a specific implied contractual obligation, a breach of that obligation by [Suddarth], and resulting damage to [BioD].'" <u>Kuroda</u>, 2010 WL 925853, at *10 (quoting <u>Fitzgerald v. Cantor</u>, 1998 WL 842316, at *1 (Del. Ch. Nov.10, 1998)).  In Count Seven, BioD alleges that Suddarth failed to act fairly and in good faith, but "[g]eneral allegations of bad faith conduct are not sufficient. Rather, [a plaintiff] must allege a specific implied contractual obligation and allege how the violation of that obligation denied [it] the fruits of the contract." <u>Id.</u>

BioD has failed to state plausible breach of loyalty and breach of the implied covenant claims against Suddarth.  Count Seven of the amended complaint is dismissed.

<u>Unjust enrichment claims (Count Nine)</u>

Defendants argue that plaintiffs' unjust enrichment claims should be dismissed because they are preempted by Arizona's UTSA.  In Count Nine, plaintiffs allege that defendants were unjustly enriched because they used "BioD Confidential Information."[28]

---

[28]Amended Complaint at 32-33, ¶¶ 198-200, Docket No. 37.

"[T]he UTSA's preemption provision[29] has generally been interpreted to abolish all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status...." Hauck Mfg. Co. v. Astec Industries, Inc., 375 F. Supp. 2d 649, 655 (E.D. Tenn. 2004). "Arizona state courts have not addressed the issue of whether the AUTSA only preempts claims based on misappropriation of information that meets the statutory definition of 'trade secret' or whether claims based on misappropriation of information that falls short of that definition might likewise be preempted." Unisource Worldwide, Inc. v. Swope, --- F. Supp. 2d ---, 2013 WL 4029170, at *3 (D. Ariz. 2013). But, courts in this district have predicted that the Arizona Supreme Court would hold "that the AUTSA preempts torts based on misappropriation of information regardless of whether it qualifies as a trade secret." Id. Thus, defendants argue that plaintiffs' unjust enrichment claims are preempted even though the alleged "confidential information" that is the basis for these claims is secret information that falls short of the statutory definition of "trade secrets".

Plaintiffs argue that their unjust enrichment claims are not preempted because they have been pled in the alternative. However, "'[w]hile ... a plaintiff has the right to plead in the alternative[,] ... if any common law claim is preempted by the'" UTSA "'then it

---

[29]That provision reads: "this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." A.R.S. § 44-407(A).

cannot go forward, ever-it is not a matter of pleading in the alternative.'" <u>LaFrance Corp.</u>

<u>v. Werttemberger</u>, Case No. C07-1932Z, 2008 WL 5068653, at *2 (W.D. Wash. Nov. 24, 2008)

(quoting <u>Patriot Homes, Inc. v. Forest River Housing, Inc.</u>, 489 F. Supp. 2d 865, 869 (N.D.

Ind. 2007)).

Plaintiffs also argue that their unjust enrichment claims are not preempted because

they are not tort claims.  However, other courts have held that unjust enrichment claims

are preempted by the AUTSA.  <u>See</u>, <u>e.g.</u>, <u>Food Services of Amer. Inc. v. Carrington</u>, Case

No. CV–12–175–PHX–GMS,  2013 WL 424507, at *3 (D. Ariz. Feb. 4, 2013) (dismissing an

unjust enrichment claim because it was preempted by the AUTSA).

Bbecause plaintiffs' unjust enrichment claims  are based on the misappropriation of

confidential information, those claims are preempted by the AUTSA.  Plaintiffs' Count

Nine is dismissed.

<u>Tortious interference claim (Count Ten)</u>

Werber, PTT, and Amnio Technology argue that BioD's tortious interference claim

is also preempted by the AUTSA.[30]  This claim is based on allegations that Amnio

Technology, Werber, and PTT induced Suddarth to disclose "contractually protected

information that may not rise to the level of a trade secret[.]"[31]  Contrary to plaintiffs'

_____

[30]Plaintiffs have not alleged a tortious interference claim against Suddarth, although
Suddarth appears to believe that they have.

[31]Amended Complaint at 33, ¶ 205, Docket No. 37.

argument, the fact that they have alleged that Suddarth was induced to disclose confidential information does not save this claim from preemption. This claim is based on "misappropriation of information" and thus is preempted by the AUTSA. <u>See</u>, <u>e.g.</u>, <u>Unisource Worldwide</u>, 2013 WL 4029170, at *7 ("[t]o the extent that Plaintiff is arguing that Defendants used confidential information, customer lists or names, without consent to interfere with Plaintiff's customer relationships, the claim is one of misappropriation and is preempted"). Count Ten of the amended complaint is dismissed.

<u>Aiding and abetting claims (Count Eleven)</u>

Defendants argue that plaintiffs' aiding and abetting claims in Count Eleven are also preempted by the UTSA. In Count Eleven, plaintiffs allege that "each [d]efendant has engaged in the misconduct of tortious interference" and thus "[e]ach [d]efendant is liable for aiding and abetting the misconduct of the other [d]efendants."[32] As discussed above, plaintiffs' tortious interference claim is preempted by the AUTSA because it is based on the misappropriation of information. It follows that plaintiffs' aiding and abetting claims, which are based on BioD's tortious interference claim, are also preempted. Thus, plaintiffs' Count Eleven is dismissed.

<u>Conspiracy claims (Count Twelve)</u>

"To establish liability on the basis of conspiracy, a plaintiff must show by clear and

---

[32]Amended Complaint at 34, ¶¶ 214, 217, Docket No. 37.

convincing evidence that the defendant and at least one other person agreed to accomplish an unlawful purpose or a lawful purpose by unlawful means, and accomplish[ed] the underlying tort, which in turn caused damages." Dawson v. Withycombe, 163 P.3d 1034, 1053 (Ariz. Ct. App. 2007). In their amended complaint, plaintiffs allege

> [d]efendants have engaged in a conspiracy among themselves and/or with others with the unlawful purpose of (1) infringing or misappropriating the BioD Confidential Information, BioDlogics Confidential Information, and [p]laintiffs' [t]rade [s]ecrets, (2) violating the Lanham Act and the Copyright Act, (3) unlawfully converting BioD and BioDlogics' intellectual property, (4) breaching and tortiously interfering with BioD's and BioDlogics' contracts, and (5) such other nefarious conduct that [d]efendants have thus far successfully concealed from [p]laintiffs.[33]

The first alleged improper purpose cannot support a civil conspiracy claim because such a claim would be preempted by the UTSA. A civil conspiracy claim cannot be based on an allegation that defendants conspired to violate the Lanham Act because "[u]nder Arizona law, a claim of civil conspiracy must be based on an underlying tort[,]" Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011), and a "claim under the Lanham Act is not a tort." Rolls-Royce Corp. v. Heros, Inc., 576 F. Supp. 2d 765, 787 (N.D. Tex. 2008). As for the allegation that defendants conspired to violate the Copyright Act, a conspiracy claim based on violations of the Copyright Act is preempted by the Act itself. Ultraflo Corp. v. Pelican Tank Parts, Inc., 823 F. Supp. 2d 578, 588 (S.D. Tex. 2011).

---

[33]Amended Complaint at 35, ¶ 220, Docket No. 37.

As for the allegation that defendants' improper purpose was the "conversion of intellectual property", Arizona does not recognize a claim for conversion of intangible property.  Miller v. Hehlen, 104 P.3d 193, 203 (Ariz. Ct. App. 2005) (holding that taking a customer list could not support a claim for conversion because it was intangible property).   As for the allegation that the improper purpose was interference with contracts, as discussed above, the interference claim is based on misappropriation of information and thus preempted by the UTSA.  And finally, the "other nefarious conduct" allegation is too vague to state a plausible conspiracy claim.

Because none of the improper purposes alleged can support a conspiracy claim, plaintiffs have failed to state plausible conspiracy claims.  Count Twelve of the amended complaint is dismissed.

Conclusion

Suddarth's motion to dismiss[34] is granted in part and denied in part.  BioD's copyright infringement claim (Count One) and breach of loyalty and breach of the implied covenant of good faith and fair dealing claims (Count Seven) are dismissed.  Plaintiffs' unjust enrichment claims (Count Nine), aiding and abetting claims (Count Eleven) and conspiracy claims (Count Twelve) are dismissed.  Suddarth's motion as to Counts 4, 5, and 6 is denied.

---

[34]Docket No. 48.

Werber, Amnio Technology, and PTT's motion to dismiss[35] is granted in part and denied in part.  BioD's tortious interference claim (Count Ten) is dismissed.  Plaintiffs' unjust enrichment claims (Count Nine), aiding and abetting claims (Count Eleven), and conspiracy claims (Count Twelve) are dismissed.  Werber, Amnio Technology, and PTT's motion to dismiss as to Count 6 is denied.

Plaintiffs are given leave to amend as to Count One only.  Plaintiffs' second amended complaint, should they choose to file one, shall be filed on or before February 13, 2014.  Plaintiffs are not given leave to amend as to any of the other dismissed claims as amendment would be futile.

DATED at Anchorage, Alaska, this <u>24th</u> day of January, 2014.

<u>/s/ H. Russel Holland</u>
United States District Judge

---

[35]Docket Nos. 45 & 46.

-28-