WO                        IN THE UNITED STATES DISTRICT COURT

                              FOR THE DISTRICT OF ARIZONA


BioD, LLC; and BioDlogics, LLC,                )
                                               )
                    Plaintiffs,                )
                                               )
          vs.                                  )
                                               )
Amnio Technology, LLC; Applied Biologics,      )
LLC; Terrell Suddarth; Pinnacle Transplant     )
Technologies, LLC; and Bruce Werber, D.P.M.,   )
                                               )
                    Defendants.                )
_____        )
                                               )
Terrell Suddarth,                              )
                                               )          No. 2:13-cv-1670-HRH
                    Counterclaimant,           )
                                               )
          vs.                                  )          O R D E R
                                               )
BioD, LLC,                                     )          Discovery Motions; Motion to
                                               )          Amend Scheduling and Planning
                    Counterdefendant.          )          Order
_____        )



        Plaintiffs move to compel production from defendants Pinnacle Transplant

Technologies, Bruce Werber, and Amnio Technology LLC.[1]  This motion is opposed and

_____

        [1]Docket No. 138.

defendants cross-move for a protective order.[2]  Defendants' cross-motion for a protective

order is opposed.[3]  Plaintiffs also move for the establishment of an amended scheduling

and planning order.[4]  This motion is opposed.[5]  Oral argument was requested on all

pending motions but is not deemed necessary.

<u>Background</u>

Plaintiffs and defendants are involved in the human placental tissue allograft

industry.  Plaintiffs BioD, LLC and BioDlogics, LLC commenced this action on August 14,

2013.  In their complaint,[6] plaintiffs asserted a claim for  misappropriation of trade secrets

against defendants Amnio Technology, LLC;  Pinnacle Transplant Technologies, LLC

(PTT); and Bruce Werber, D.P.M.[7]  On September 20, 2013, defendants moved[8] to dismiss

plaintiffs' complaint, arguing in part that plaintiffs had failed to plead their trade secret

---

[2]Docket Nos. 157 & 159.

[3]Docket No. 164.

[4]Docket No. 150.

[5]Docket Nos. 153, 154 & 166.

[6]Docket No. 1.

[7]Terrell Suddarth and Applied Biologics LLC are also defendants in this matter, but any reference herein to "defendants" means Werber, PTT, and Amnio Technology only. Any reference herein to "the parties" includes plaintiffs and all defendants except Applied Biologics.

[8]Docket Nos. 27 & 32.

claim with sufficient detail.  On October 7, 2013, plaintiffs filed an amended complaint,[9] in

which they again asserted a misappropriation of trade secrets claim against defendants.

Defendants moved to dismiss[10] plaintiffs' amended complaint, again arguing that plaintiffs

had failed to state a plausible trade secret claim.  On January 24, 2014, the court denied

defendants' motion to dismiss as to plaintiffs' misappropriation of trade secret claim

because it concluded that this claim was plausible.[11]

Meanwhile, on October 31, 2013, plaintiffs filed a motion for a preliminary

injunction, in which they sought to enjoin defendants from using their trade secrets.[12]

Plaintiffs also filed a motion for expedited discovery "to determine the scope of

Defendants' infringing activities."[13]  The court denied the motion for expedited discovery

because of defendants' pending motion to dismiss.[14]

On January 28, 2014, after the motion to dismiss had been resolved, the court

"reconsider[ed] the appropriateness of early discovery in this case" and decided to permit

---

[9]Docket No. 37.

[10]Docket Nos. 45 & 46.

[11]Order re Motion to Dismiss at 20, Docket No. 80.

[12]Docket No. 52.

[13]Motion for Expedited Discovery at 2, Docket No. 53.

[14]Docket No. 67 at 2.  The motion for preliminary injunction was subsequently denied because plaintiffs failed to offer any further support for the motion.  Docket No. 171.

early discovery that was "narrowly tailored to focus upon the trade secrets or other confidential and protected rights which the plaintiffs rely upon as the basis for a preliminary injunction."[15] The court ordered plaintiffs to "identify with specificity the trade secrets and other confidential matters upon which they rely in seeking a preliminary injunction and disclose them to defendants."[16]  The court further ordered plaintiffs to propose a schedule for the preliminary discovery they wished to undertake.[17]  The case status order provided that

> [i]f there are disagreements as to the nature or extent of preliminary discovery, the parties' disagreement shall be reduced to writing and filed with the court in a single, joint memorandum of no more than 10 pages as a preliminary to an informal, telephonic conference which plaintiffs shall arrange with the court's judicial assistant.[[18]]

On February 14, 2014, plaintiffs made their trade secret disclosure.[19]  Plaintiffs identified eleven trade secrets associated with the manufacture of BioDFactor and five

---

[15]Order re Case Status at 2, Docket No. 81.

[16]Id.

[17]Id.

[18]Id. at 3.  The case status order included the name of and phone number for the court's judicial assistant in a footnote.  Id. at 3, n.9.

[19]SEALED Exhibit 2, Docket No. 103.

associated with the manufacture of BioDFence and BioDryFlex.[20]  Plaintiffs also identified

their "confidential information" as all their standard operating procedures, their

manufacturing protocols for all products, their packaging techniques for BioD products,

their storage techniques for BioD products, and their results of research and development.[21]

Defendants objected to plaintiffs' disclosure, arguing that it lacked specificity.  On

March 6, 2014, plaintiffs and defendants filed a joint memorandum[22] as called for in the

January 28, 2014 case status order.  However, no informal conference with the court was

ever held.[23]  Plaintiffs designated their February 14, 2014 trade secret disclosure as

"attorney's eyes only" (AEO) pursuant to the parties' protective order regarding

confidential information.[24]  Defendants objected to the AEO designation and on March 10,

2014, plaintiffs filed an application for protection of their trade secret disclosure.[25]

---

[20]Id. at 2-3.

[21]Id. at 4.

[22]Docket No. 98.

[23]Because plaintiffs never arranged an informal conference, defendants contend that plaintiffs abandoned their request for expedited discovery.  Plaintiffs contend that when their counsel contacted the "clerk" to arrange an informal conference, he was instructed to wait.  It is highly improbable that anyone in chambers would have so responded to a request for an informal conference with the court.  The court suspects that plaintiffs' counsel contacted the clerk's office in Phoenix, rather than contacting chambers.

[24]Docket No. 74.

[25]Docket No. 104.

On March 4, 2014, the court entered an initial case status report, calling upon the parties to conduct a preliminary scheduling conference and to file a scheduling and planning report within 14 days.[26]

The parties timely filed their scheduling and planning report,[27] and on March 27, 2014, the court entered a scheduling and planning order.[28]  The scheduling and planning order makes no mention of the proposed preliminary discovery on plaintiffs' trade secrets. The scheduling and planning order provides that plaintiffs' expert witness disclosures were due by July 15, 2014 and defendants' by August 15, 2014; final fact witness lists were due by August 1, 2014; final expert witness lists are due by September 15, 2014; and all discovery is to be completed by September 30, 2014.[29]

On April 1, 2014, plaintiffs served Requests for Productions on defendants.  In response to 32 of 38 requests, Amnio Technology objected

> to producing the documents responsive to this request because Plaintiffs have not yet specifically identified their alleged trade secrets.  Plaintiffs are not permitted to take discovery concerning their trade secret misappropriation claim until they first specifically and separately identify each particular process, formula, pattern, device, compilation of information or other

---

[26]Docket No. 97.

[27]Docket No. 105.

[28]Docket No. 106.

[29]Id. at 3-4.

> matter that is alleged to be a trade secret by separately stating
> each such alleged trade secret and describing the nature,
> subject matter and details of each such trade secret with
> sufficient particularity to show its unique and secret nature to
> separate it from the general knowledge and knowledge readily
> ascertainable by those in the industry.[30]

Werber made the same objection to 26 out of 33 requests for production,[31] and, PTT made

the same or a similar objection to 29 of 41 requests.[32]

On April 18, 2014, the court denied plaintiffs' application for protection of trade

secrets because plaintiffs had "not established good cause for the AEO designation...."[33]

The court explained that

> [t]he disclosures in plaintiffs' amended complaint and at least
> claimed Trade Secrets A1 through 1C of Exhibit 2 [the February
> 14, 2014 disclosure] are remarkably similar....  The disclosures
> in Exhibit 2 are not a whole lot more specific than what is set
> forth in paragraph 30 of plaintiffs' complaint.  The court
> seriously doubts that disclosure of Exhibit 2 would give very

---

[30]Amnio Technology LLC's Response to BioD LLC's [First] Request for Production of Documents & Tangible Things at 5, Exhibit E, Plaintiffs' Motion to Compel Production [etc.], Docket No. 138.

[31]Dr. Bruce Werber's Response to BioD LLC's [First] Request for Production of Documents & Tangible Things, Exhibit F, Plaintiffs' Motion to Compel Production of Documents [etc.], Docket No. 138.

[32]Pinnacle Transplant Technologies, LLC's Response to Plaintiff BioD LLC's Request for Production of Documents & Tangible Things, Exhibit D, Plaintiffs' Motion to Compel Production of Documents [etc.], Docket No. 138.

[33]Order re Application for Protection of Trade Secrets at 4, Docket No. 123.

much away – certainly not to the defendants who are alleged
to be wrongfully using those trade secrets.[34]

On May 13, 2014, as a supplement to their February 14, 2014 disclosure of trade secrets, plaintiffs disclosed their "Standard Operating Procedures and Batch Records for the products at issue in this case...."[35] Plaintiffs highlighted in yellow the specific steps in the SOPs that they contend are trade secrets.[36] Plaintiffs also "contend that the unified process of each of these SOPs' components constitutes a protected trade secret...."[37]

On May 28, 2014, defendants advised plaintiffs that they still believed that plaintiffs had failed to identify their trade secrets with sufficient particularity.[38] Defendants contended that the SOPs that plaintiffs had disclosed made reference to thirty-two other documents, documents which plaintiffs have not disclosed.[39] Defendants further contended that plaintiffs' highlighting of individual steps had raised more questions than answers as the highlighting seemed to be arbitrary.[40]

_____

[34]Id. at 3.

[35]SEALED Exhibit G at 1, Docket No. 156.

[36]Id. at 2.

[37]Id.

[38]SEALED Exhibit J at 1, Docket No. 156.

[39]Id. at 2-3.

[40]Id. at 3.

Plaintiffs and defendants were unable to resolve this discovery issue, and plaintiffs now move to compel defendants to produce all non-privileged documents that are responsive to the requests to which defendants have objected on the ground that plaintiffs have failed to identify their trade secrets with specificity.[41]  In addition, plaintiffs move to extend certain deadlines in the scheduling and planning order for 60 days because they have been unable to take discovery on their trade secret claim.

Defendants take the position that responding to the discovery requests at issue would require them to produce confidential information and that they should not have to produce such information until plaintiffs have identified their trade secrets with reasonable particularity.  Thus, defendants move for a protective order prohibiting discovery on and disclosure of their confidential and proprietary information relating to research, development, production, and sales of their products until plaintiffs make the requisite identification of their trade secrets.

Discussion

Rule 34, Federal Rules of Civil Procedure, permits each party to serve the opposing party with document requests within the scope of Rule 26(b).  The scope of discovery under

---

[41]For PTT, this would be RFP Nos. 1, 2, 3, 4, 5, 7, 8, 9, 10, 12, 13, 14, 15, 16, 19, 21, 22, 23, 24, 25, 27, 28, 29, 30, 31, 33, 37, 38, & 41.  For Amino Technology, this would be RFP Nos. 1, 2, 7, 9, 11, 12, 16, 18, 20, 21, 22, 23, 24, 25, 26, 27, 29, 30, 31, 32, 33, 34, 35, & 37.  For Werber, this would be RFP Nos. 1, 2, 4, 7, 8, 9, 11, 12, 13, 14, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27, 28, 29, 30, 31, & 32.

Rule 26(b) is broad. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...." Fed. R. Civ. P. 26(b)(1).  When responding to Rule 34 requests, the opposing party "must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B).  If the opposing party fails to respond, Rule 37(a)(3)(B) provides, in pertinent part, that the "party seeking discovery may move for an order compelling ... production[.]"

However, pursuant to Rule 26(c)(1), the party from whom discovery is sought may move for a protective order.

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ...
>
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]

Fed. R. Civ. P. 26(c)(1).  "The burden is upon the party seeking the order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." Rivera v. NIBCO, Inc., 364 F.3d 1057, 1063 (9th Cir. 2004) (quoting Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206, 1210–11 (9th Cir. 2002)).

In their opening brief in support of their motion to compel, plaintiffs argued that there was no authority to support defendants' position that plaintiffs had to identify their

trade secrets with particularity prior to discovery.  However, in their reply brief, plaintiffs

acknowledge that a party may be required to identify its trade secrets with reasonable

particularity before it can take discovery.   For example, in Dura Global Technologies, Inc.

v. Magna Donnelly, Corp., Case No. 07-cv-10945, 2007 WL 4303294, at *1 (E.D. Mich. Dec.

6, 2007), the defendant moved for a protective order to "prevent [the] Plaintiffs from

proceeding with discovery of Defendant's technical trade secrets until Plaintiffs sufficiently

identify their own trade secrets which they allege Defendant misappropriated."  The court

observed that

> [d]etermining whether a trade secret has been misappropriated
> usually involves examining things that the other party
> considers its own trade secrets.  There is no privilege excepting
> trade secrets from discovery, but courts must exercise
> discretion to avoid unnecessary disclosures of such
> information.  [P]laintiff will normally be required first to
> identify with reasonable particularity the matter which it
> claims constitutes a trade secret, before it will be allowed
> (given a proper showing of need) to compel discovery of its
> adversary's trade secrets.

Id. at *2 (internal citations omitted); see also, DeRubeis v. Witten Technologies, Inc., 244

F.R.D. 676, 680-81 (N.D. Ga. 2007) (same);  AutoMed Technologies, Inc. v. Eller, 160 F.

Supp. 2d 915, 926 (N.D. Ill. 2001) (same); Leucadia, Inc. v. Applied Extrusion Technologies,

Inc., 755 F. Supp. 635, 637 (D. Del. 1991) (same); L-3 Commc'n Corp. v. Jaxon Engineering

& Maintenance, Inc., Case No. 10–cv–02868–MSK–KMT, 2011 WL 10858409, at *1 (D. Colo.

Oct. 12, 2011) (same).

> [C]ourts have identified at least four policies which support delaying trade secret discovery until the trade secret plaintiff has sufficiently described the trade secrets at issue. First, if discovery on the defendant's trade secrets were automatically permitted, lawsuits might regularly be filed as "fishing expeditions" to discover the trade secrets of a competitor....[42] Second, until the trade secret plaintiff has identified the secrets at issue with some specificity, there is no way to know whether the information sought is relevant....   Thus, requiring the plaintiff to sufficiently identify its trade secrets prior to allowing discovery on the defendant's trade secrets helps the court to determine the outer permissible bounds of discovery and prevents needless exposure of the defendant's trade secrets.
>
> Third, it is difficult, if not impossible, for the defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated....   Finally, requiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that it will not mold its cause of action around the discovery it receives.

DeRubeis, 244 F.R.D. at 680-81 (internal citations omitted).

---

[42]Defendants insist that plaintiffs are on a "fishing expedition" here because in response to Amnio Technology's Request for Production No. 44, which asked for "[a]ll documents constituting, containing, or reflecting the use by Amnio Technology LLC of Plaintiff's Trade Secrets, BioD's Confidential Information and BioDLogics Confidential Information alleged in paragraph 44 of your Amended Complaint", plaintiffs stated that they "are searching for responsive documents and will produce" such documents "if and when found...." Plaintiffs' Response to Amnio Technology, LLC's First Set of Requests for Production at 21-22, Exhibit B, Amnio Technology LLC's and Bruce Werber's Motion for Protective Order [etc.], Docket Nos. 157 & 158. Plaintiffs provided a similar response to the request for "[a]ll documents constituting, containing, or reflecting the 'knowledge that [Plaintiffs' Trade Secrets] had been inappropriately derived from Plaintiffs,' as that term is used in paragraph 183." Id. at 25.

A plaintiff also might <u>not</u> be required to identify its trade secrets with reasonable particularity prior to discovery.

> [C]ourts have identified at least three policies which support allowing the trade secret plaintiff to take discovery prior to identifying its claimed trade secrets. First, courts have highlighted a plaintiff's broad right to discovery under the Federal Rules of Civil Procedure. Second, the trade secret plaintiff, particularly if it is a company that has hundreds or thousands of trade secrets, may have no way of knowing what trade secrets have been misappropriated until it receives discovery on how the defendant is operating. Finally, if the trade secret plaintiff is forced to identify the trade secrets at issue without knowing which of those secrets have been misappropriated, it is placed in somewhat of a "Catch–22" [because] [i]f the list is too general, it will encompass material that the defendant will be able to show cannot be trade secret. If instead it is too specific, it may miss what the defendant is doing.

<u>Id.</u> at 680 (internal citations omitted).

Here, the court determined that plaintiffs had to identify their trade secrets with reasonable particularity prior to taking early, preliminary discovery. It did not make any such determination for the discovery that plaintiffs now seek to take. However, to ensure that plaintiffs are not on a fishing expedition and so that the court and defendants can discern the relevancy of plaintiffs' discovery requests, it would be appropriate for plaintiffs to identify their trade secrets with reasonable particularity.

Plaintiffs contend that they have already identified their trade secrets with reasonable particularity. Defendants disagree. "'Reasonable particularity' has been

defined as a description of the trade secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets." Hill v. Best Medical Int'l, Inc., Case No. 09–1194, 2010 WL 2546023, at *3 (W.D. Pa. June 24, 2010).

In Dura Global, the court considered whether the plaintiffs had identified their trade secrets with "reasonable particularity." The plaintiffs had provided "a list of general categories and types of information they allege comprise their trade secrets." 2007 WL 4303294. at *4. The court found this insufficient because it was "too general to specify the trade secrets at issue." Id.; see also, L-3 Commc'n Corp., 2011 WL 10858409, at *2 ("general allegations and generic references to products or information are insufficient to satisfy the reasonable particularity standard").

Similarly here, plaintiffs' identification of their trade secrets to date has been much too vague and general. As this court previously stated, plaintiffs' February 14, 2014 disclosure was not more particular than plaintiffs' allegations in their amended complaint. Plaintiffs' disclosure of their SOPs and their highlighting of certain steps in the SOPs also fall short. Plaintiffs cannot claim that a method or process is a trade secret without identifying the steps in the process and explaining how those steps make their method or process unique. See Switch Commc'n Group v. Ballard, Case No. 2:11-cv-00285-KJD-GWF, 2012 WL 2342929, at *5 (D. Nev. June 19, 2012) ("In order to meet its burden of describing

-14-

its alleged trade secrets with reasonable particularity," for purposes of discovery, "Switch

must specifically describe what particular combination of components renders each of its

designs novel or unique, how the components are combined, and how they operate in

unique combination").   Plaintiffs must explain how the combination of much of what

appears to be generally known information can constitute a trade secret.  It is simply not

sufficient for plaintiffs to identify a trade secret as a "method" without some explanation

of why that "method" could be considered a legally protectable trade secret. Plaintiffs must

provide some basis for their contention that their methods and processes are unique and

thus legally protectable.  Contrary to their contention, plaintiffs are not being asked to

prove their trade secret claim prior to being able to take discovery.  But, they must provide

enough detail  about their alleged trade secrets to at least suggest that the alleged trade

secrets might be legally protectable.  To date, they have not done so.  In short, plaintiffs

must identify their trade secrets with more specificity than they have done so far.

<u>Conclusion</u>

Based on the foregoing, plaintiffs' motion to compel[43] is denied, and defendants'

motion for a protective order[44] is granted.  Defendants do not have to respond to any of

plaintiffs' discovery requests that would involve defendants disclosing proprietary or

---

[43]Docket No. 138.

[44]Docket No. 157.

confidential information until plaintiffs have identified their trade secrets with more specificity.  By August 26, 2014, plaintiffs shall serve on defendants a disclosure which identifies, with reasonable particularity, the trade secrets which plaintiffs contend defendants have misappropriated.

The disagreement about the disclosure of plaintiffs' trade secrets has upset the discovery schedule established for this case.[45]  Therefore, plaintiffs' motion to amend the scheduling and planning order[46] is granted.  Fact discovery shall be completed by December 31, 2014.  As fact discovery proceeds, but not later than December 1, 2014, the parties shall propose a calender for expert discovery and final motion practice.

DATED at Anchorage, Alaska, this 5th day of August, 2014.

/s/ H. Russel Holland
United States District Judge

---

[45]A scheduling and planning order "may be modified only for good cause...."  Fed. R. Civ. P. 16(b)(4).

[46]Docket No. 150.